# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. S20C-08-025 MHC |
| | ) | |
| JEFFREY FERNBACH, and | ) | |
| FERNMOOR HOMES, INC. | ) | |
| a/k/a FERNMOOR HOMES | ) | |
| AT WOODLANDS PEPPER | ) | |
| CREEK, DE LLC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Submitted: March 7, 2022
Decided: April 1, 2022

*Upon Consideration of Defendants' Motion for Summary Judgment,*
**GRANTED.**

James M. Thompson, Dagsboro, Delaware. *Pro Se Plaintiff.*

Michele M. Subers, Esquire, Patrick G. Rock, Esquire, Heckler & Frabizzio, P.A. *Attorneys for Defendants.*

**CONNER, J.**

# INTRODUCTION

Plaintiff James Thompson ("Thompson") brought this action against his former employer Defendants Jeffrey Fernbach[1] and Fernmoor Homes, Inc. a/k/a Fernmoor Homes at Woodlands Pepper Creek, DE LLC ("Defendants") alleging retaliation under 19 *Del. C.* § 2365. Thompson was injured at work and soon thereafter sought workers' compensation benefits. Thompson was terminated approximately three months later. Defendants moved for summary judgment arguing the complaint was filed outside of the statute of limitations and that Thompson has failed to make out a prima facie claim. After carefully reviewing the record and relevant law, Defendants' motion for summary judgment is **GRANTED.**

# FACTUAL AND PROCEDURAL BACKGROUND

A. <u>Facts</u>

On June 19, 2015, Thompson was hired by Defendants as a part-time model home host at the Woodlands of Pepper Creek community in Dagsboro, Delaware.[2] According to Thompson, his job responsibilities involved being "onsite to greet anybody who came to visit the [model] home. I would show them around the model

---

[1] Jeffrey Fernbach is the president of Fernmoor Homes, Inc.
[2] *See* Compl. ¶¶ 3, 5; Defs.' Mot. Summ. J., Ex. B ¶ 3.

2

home."[3] His position also entailed directing potential home buyers to a sales associate.[4] Thompson was paid twelve dollars per hour and worked three days per week.[5] On January 28, 2016, Thompson received a payment from Defendants in the amount of $1,250, which was distinct from his hourly pay.[6] Thompson claims it was a performance-related bonus.[7]

It is undisputed that foot-traffic at the model home declined in 2016.[8] According to Defendants, home sales at the Woodlands of Pepper Creek declined by over fifty percent between 2015 and 2016.[9] Thompson testified during 2016, "things definitely slowed down."[10]

At least up until October 9, 2016, Defendants did not communicate any dissatisfaction with Thompson's job performance.[11] On October 10, 2016, Thompson injured his elbow at work.[12] Thompson promptly notified his supervisor of the injury.[13] Although Thompson's injury required medical care, Defendants refused to pay for Thompson's medical treatment.[14] On or about October 11, 2016,

---

[3] Thompson Dep. 6:13–18; *see also* Defs.' Mot. Summ. J. ¶ 5.
[4] Defs.' Mot. Summ. J. ¶ 5.
[5] *Id.* at Ex. C.
[6] Defs.' Reply in Support of Mot. Summ. J., Ex. P.
[7] Compl. ¶ 6.
[8] Defs.' Mot. Summ. J. Exs. E–I.
[9] Defs.' Mot. Summ. J. ¶ 15.
[10] Thompson Dep. 12:8–9.
[11] Compl. ¶ 5; Answ. ¶ 5.
[12] Compl. ¶ 4; Def.'s Mot. Summ. J. ¶ 14.
[13] Compl. ¶ 7.
[14] *Id.* ¶ 8.

Thompson filed a claim for workers' compensation benefits.[15] According to Thompson, Defendants told him that he was not eligible for workers' compensation coverage.[16] Thompson claims that on October 14, 2016, he visited an emergency medical center, paid for medical treatment and was diagnosed with a broken elbow.[17] Per the treating doctor's orders, Thompson missed three days of work.[18] Defendants refused to compensate Thompson for the work he missed as a result of the injury.[19] Thompson claims without documentation that he received workers' compensation benefits that covered his medical expenses.[20]

On November 29, 2016, Defendants demanded Thompson immediately repay the January 28, 2016, payment, which Defendants apparently believed was a payroll error.[21] At that time, Defendants also expressed disappointment that Thompson did not notify Defendants that he received the January 28, 2016, payment.[22] Ultimately, Defendants abandoned their attempt to recover the $1,250 payment from Thompson.[23]

---

[15] Thompson Dep. 20:22–21:5.
[16] Compl. ¶ 8.
[17] *Id*. at ¶ 10; Thompson Dep. 21:7–17.
[18] *See* Thompson Dep. 21:7–13; *see also* Defs.' Reply in Support of Mot. Summ. J., Ex. P.
[19] *See* Defs.' Reply in Support of Mot. Summ. J., Ex. P.
[20] Thompson Dep. 44:10–14.
[21] Defs.' Reply in Support of Mot. Summ. J., Ex. P.
[22] *Id.*
[23] *Id.*

On January 12, 2017, Defendants notified Thompson that his employment with Defendants was ending.[24] The email stated in relevant part, "[a]s we discussed due to a lack of action right now . . . . Friday the 20th will be your last day. Should we need you again come Spring – we will certainly reach out."[25]   Thompson filed a claim for unemployment insurance benefits on January 22, 2017.[26] The next day, Defendants sent Thompson an email that stated in full, "Thanks Jim, hopefully have you back in the spring time!!!"[27] No home sales occurred at the Woodlands Pepper Creek in 2017.[28]

Although Thompson claims that Defendants have employed other individuals to perform Thompson's previous work duties at other sites,[29] no model home hosts have been hired at the Woodlands Pepper Creek since Thompson's employment ended.[30]

On November 19, 2018, Thompson's then-counsel, Mr. Daniel C. Herr, Esq., sent a letter to Defendants in an attempt to resolve this matter.[31] On December 15,

---

[24] Defs.' Mot. Summ. J. Ex. J.
[25] *Id.*
[26] *Id.* at Ex. K.
[27] *Id.* at Ex. L.
[28] *Id.* at Ex. B.
[29] Compl. ¶ 18.
[30] Defs.' Mot. Summ. J. Ex. B.
[31] *Id.* at Ex. M.

2018, Defendants' general counsel sent a letter in reply to Mr. Herr that stated in relevant part, "[Thompson's] termination was necessitated by the market."[32]

B. Procedural History

Thompson filed his complaint on August 17, 2020, and Defendants were served on August 24, 2020. On September 15, 2020, or twenty-two days after service was made, Thompson filed a motion for default judgment because Defendants failed to file an answer to the complaint within twenty days. That same day, counsel entered an appearance on behalf of Defendants. On September 24, 2020, Defendants filed an answer to the complaint. Defendants filed a response in opposition to Thompson's motion for default judgment on October 8, 2020. On October 28, 2022, Thompson filed a reply to Defendants' responsive pleading regarding Thompson's motion for default judgment.[33] On November 6, 2020, the Court denied Thompson's motion for default judgment.[34] On November 19, 2020, Thompson filed a motion to reconsider the denial of Thompson's motion for default judgment, which was denied by the Court for the reasons stated at the November 6, 2020, hearing. Defendants filed a motion to dismiss on November 23, 2020, which was denied by the Court on

---

[32] *Id.* at Ex. N.
[33] *"Unless a judge directs otherwise, there is only a motion and a reply." Hammer v. Howard Med., Inc.*, 2017 WL 1170795, at *4 (Del. Super. Feb. 14, 2017).
[34] *See Holland v. Sterling*, 1988 WL 130385, at *1 (Del. Super. Nov. 29, 1988) (citing *Delaware Sand & Gravel Co. v. Bryson*, 414 A.2d 207, 208 (Del. 1980)).

December 18, 2020, to allow for discovery of material facts. On September 30, 2021, Defendants filed a motion for summary judgment. After briefing concluded, oral argument on Defendants' motion for summary judgement was held on March 7, 2022.

## PARTY CONTENTIONS

Defendants first argue that the action is barred by the applicable statute of limitations. Defendants also contend that Thompson failed to establish a prima facie claim under 19 *Del. C.* § 2365. Specifically, it is alleged that Thompson is unable to prove a causal connection between his October 2016 workers' compensation benefits claim and the termination of employment in January 2017. Moreover, Defendants claim that no retaliatory employment action occurred. Rather, unfavorable market conditions necessitated the elimination of Thompson's position.

Thompson contends that he filed this action within the statute of limitations. Thompson also argues that Defendants motion should be denied because Defendants are ignoring relevant information and his allegations will be further substantiated at trial.

## STANDARD OF REVIEW

In considering a motion for summary judgment under Superior Court Civil Rule 56, the Court must view the facts in the light most favorable to the non-moving party.[35] Such motions will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[36] The movant must demonstrate that "no material issues of fact" are present.[37] The burden then shifts to the non-moving party "to produce evidence to show that there is a genuine issue of material fact."[38] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[39]

## DISCUSSION

A. Statute of Limitations

Nineteen *Del. C.* § 2365 states in part, "[a]ny claim of an employee alleging such action by an employer shall be filed with the Superior Court within 2 years of the employer's alleged action. . . ."[40] The instant § 2365 action was filed in this Court

---

[35] *Moore v. Sizemore*, Del. Supr., 405 A.2d 679, 680 (1979).
[36] Super. Ct. Civ. R. 56(c).
[37] *Moore*, 405 A.2d at 680; *see also Brzoska v. Olson*, 668 A.2d 1355, 1365 (Del. 1995) (stating that "immaterial factual disputes will not preclude summary judgment.").
[38] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[39] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *see also* Super. Ct. Civ. R. 56(e).
[40] *See Weller v. Morris James LLP*, 2020 WL 2511118, at *2 (Del. Super. May 14, 2020).

on August 17, 2020. However, the timing of the alleged retaliatory action is in dispute.

Defendants contend that the date of the alleged retaliatory action was the last day Thompson worked for Defendants, which was January 20, 2017. If the Court adopts Defendants' preferred timeline, this action is barred by the two-year statute of limitations because approximately three years and seven months elapsed between the employer's action and the initiation of this suit.

Conversely, Thompson claims that the applicable statute of limitations period began running on December 15, 2018, which is the date Defendants sent Thompson a letter stating in part that he had been terminated. In Thompson's view, the date his employment ended was not the date that a retaliatory action occurred because Defendants "attempted to dissuade [Thompson] from initiating legal action immediately by disguising [Thompson]'s termination of employment as a temporary lay-off . . . ."[41] Thus, Thompson believes this action was filed less than two years after the alleged retaliatory action.

Based on the evidence, January 20, 2017, was Thompson's last day of employment with Defendants. Although he may have hoped to return at a later time, there was no offer ever made to return Thompson to Defendants' employ. Therefore,

---

[41] Compl. ¶ 15.

Thompson's complaint should have been filed by January 20, 2019. The complaint is barred by the statute of limitations.

However, assuming for the sake of the argument that Thompson's action was filed within the applicable statute of limitations period, the Court also addresses whether a genuine issue of material fact exists.

B. <u>Causal Connection Between Thompson's Exercise of Rights and Termination</u>

Under 19 *Del. C.* § 2365, a prima facie claim requires Thompson to prove: "(1) [he] exercised rights under the Workers' Compensation Act; (2) [Defendants] took an adverse employment action against [him], and (3) there was a causal connection between [his] exercise of rights and the adverse employment action."[42]

Here, the third prong of Thompson's claim is deficient. It is undisputed that Thompson filed for workers' compensation and that he was terminated. The Court must determine whether there was a causal connection between Thompson seeking workers' compensation benefits and the termination of his employment. A causal connection may be proven by demonstrating: "(1) antagonism or retaliatory animus toward plaintiff; (2) temporal proximity between the workers' compensation claim

---

[42] *Santora v. Red Clay Consol. Sch. Dist.*, 901 F. Supp. 2d 482, 491 (D. Del. 2012), *aff'd,* 580 Fed. Appx. 59 (3d Cir. 2014); *accord Weller v. Morris James LLP, 2020 WL 4208466, at *2 (Del. Super. July 22, 2020).*

and the adverse employment action; or (3) the record as a whole showing an inference of retaliation."[43]

In *Santora v. Red Clay Consol. Sch. Dist.*, the United States Court of Appeals for the Third Circuit affirmed that a nearly five-month gap between a workers' compensation claim and an adverse employment action was too tenuous to demonstrate temporal proximity under 19 *Del. C.* § 2365.[44]

Assuming, *arguendo*, that this action is not barred by the statute of limitations because Defendants' alleged retaliatory action occurred on December 15, 2018, then over two years elapsed between the claim for workers' compensation benefits in October 2016 and the retaliatory action. Under *Santora*, temporal proximity standing alone is clearly too weak to establish a causal connection between the two events separated by more than two years.

Further, a causal connection has not been demonstrated through evidence of antagonism or retaliatory animus toward Thompson, and there is no inference of retaliation from a review of the record as a whole. Business at the Woodlands of Pepper Creek slowed during the time period preceding Thompson's dismissal.

---

[43] *Norwood v. Mid Sussex Rescue Squad, Inc.*, 2016 WL 2621298, at *1 (Del. Super. Apr. 20, 2016) (quoting *Santora*, 901 F. Supp. 2d at 491).
[44] *Santora*, 580 Fed. Appx. at 63; *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (holding that "[a]lthough there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.").

Thompson acknowledges this fact and the January 12, 2017, email from Defendants to Thompson references a lack of customers as the reason for the employment separation decision. Although Defendants hoped to employ Thompson in the future, there is no evidence that Defendants disguised the termination as temporary. The record also does not show that a new model home host was hired to replace Thompson, and there is no evidence that the January 28, 2016, payment related to either the termination or the workers' compensation claim. While Thompson hopes to further substantiate his claims at trial, the Court bases its decision on the record before it.[45] Taking the record as a whole, Thompson has not proven that Defendants exhibited antagonism or retaliatory animus.

Although this decision is not an endorsement of Defendants' conduct (i.e. in not paying for the initial medical bills and requesting return of the January 28, 2016, payment),[46] by viewing the evidence in the light most favorable to Thompson it is clear that he has failed to make a sufficient showing of an essential element of his case. There is no genuine issue of fact relating to the causation between the

---

[45] Super. Ct. Civ. R. 56(c) states: "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[46] *Maddox v. CitiMortgage, Inc.*, 2014 WL 1155312, at *2 (Del. Super. Feb. 28, 2014) ("the Court may grant *pro se* litigants reasonable accommodations where possible based on their lack of familiarity with the law.).

termination of employment and Thompson's workers' compensation claim. Thus, summary judgment is appropriate.

## CONCLUSION

As stated previously, the Court concludes that Thompson's employment terminated on January 20, 2017, and therefore the complaint is barred by the statute of limitations. However, if the Court concluded that his employment terminated on December 15, 2018, Thompson is unable to prove the requisite temporal proximity. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

*/s/ Mark H. Conner*
Mark H. Conner, Judge

cc: Prothonotary